No. 10,939.

THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* KELLY.

RAILROADS.—*Duties to Passengers.—Negligence.—Instructions.*—Railroads are required to provide safe places and seats for their passengers, and a statement of this or any general principle to the jury, in a suit by a passenger for an injury, if not strictly necessary under the evidence, is not improper, and is certainly harmless.

SAME.—*Liability to Passenger for Acts of Servant.*—In a suit by a railroad passenger for injury caused by a careless or wilful act of a brakeman, an instruction that it was the duty of the defendant to carry its passengers safely and properly, that it was responsible for the manner in which its servants executed that duty, and bound to protect its passengers from their violence and from violence from any other source, is correct as far as it goes, and could not mislead the jury.

SAME.—It is the duty of a passenger to obey reasonable directions of the conductor of the train as to passing from one car to another to find a seat while the train is in motion unless he knows that to do so would be dangerous; and the passenger may assume that the conductor has reasonable knowledge that obedience in that respect will not be dangerous.

SAME.—A carrier is responsible for acts of agents performed in the line of their duty, whether the particular act is authorized or not.

INSTRUCTIONS.—*Practice.*—If instructions, taken all together, express the law of the case correctly, there can be no available error in the fact that, taken singly, some one of them is found to be imperfect.

From the Vanderburgh Circuit Court.

*S. B. Vance,* for appellant.

*C. L. Wedding* and *D. B. Miller,* for appellee.

ELLIOTT, J.—On the night of the 4th of July, 1882, the appellee was a passenger on an excursion train of the appellants; he entered a car before the train moved, found it so crowded that he could not obtain a seat; remained standing until near midnight, when the conductor directed him to go forward to the front car and there take a seat; he undertook to obey this order, and in attempting to cross from one car to the other was, as the evidence adduced in his behalf tends to prove, either carelessly or purposely jostled by one of appellant's brakemen and thrown from the train.

Railway companies are bound to provide safe places for those whom they accept as passengers, and to make reasonable provision for seating those whom they undertake to carry. Thomp. Car. 224; Hutch. Car., section 225.

The fourth instruction given in this case declares this rule of law, and was not erroneous. It is sometimes proper to give a general statement of the duty of carriers, and when the statement is a correct one, even though not strictly necessary under the evidence, there is no material error. *Sawyer* v. *Sauer*, 10 Kan. 470; Thomp. Charging the Jury, section 475.

The fifth instruction reads thus: " The defendant's obligation was to carry the plaintiff safely and properly ; and, if the defendant entrusted this duty to servants, the law holds the defendant responsible for the manner in which they executed it. The carrier is obliged to protect the passenger from violence from its own servants, and from every source whatsoever." It is established law that carriers are responsible for the negligent and wilful wrongs of their servants suffered or done in the line of their employment. It is also true, as a general rule, that carriers are under a duty to protect their passengers from violence from all sources. In *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202 (2 Am. R. 39), it was said : " The law seems now to be well settled that the carrier is obliged to protect his passengers from violence and insults from whatsoever source arising," and this view is well sustained. *Britton* v. *Atlantic, etc., R. R. Co.*, 43 Am. R. 749;

·Hutch. Car., section 596; Thomp. Car. 365. There rests on carriers this obligation to protect passengers from violence, and an instruction which asserts in general terms this obligation can not, in such a case as the present, be deemed erroneous. It is no doubt true that if the violence could not have been foreseen or prevented by the highest degree of care, the carrier would be absolved from liability. Thomp. Car. 364, 365; Hutch. Car., section 552; *Grand Rapids, etc., R. R. Co.* v. *Boyd,* 65 Ind. 526. This, however, does not prove that the statement of the general rule is incorrect, for the duty of protecting passengers from violence does rest on all carriers, although this duty is not an absolute one. If the care which the law requires is exercised by the carrier, then the duty is discharged and there is no liability.

A carrier is responsible for injuries wilfully or carelessly inflicted upon passengers by servants engaged in the performance of duties within the general scope of their employment, whether the particular act was or was not authorized by the master. The question in such cases is whether the servant was, when he inflicted the injury, acting within the line of his duties, and not whether the particular act was authorized. *Terre Haute, etc., R. R. Co.* v. *Jackson,* 81 Ind. ₹19; *Noblesville, etc., G. R. Co.* v. *Gause,* 76 Ind. 142 (40 Am. R. 224); *Jeffersonville R. R. Co.* v. *Rogers,* 38 Ind. 116 (10 Am. R. 103); *Stewart* v. *Brooklyn, etc., R. R. Co.,* 90 N. Y. 588; S. C., 43 Am. R. 185; *Lynch* v. *Metropolitan, etc., R. R. Co.,* 90 N. Y. 77; S. C., 43 Am. R. 141.

The duty of a carrier is to safely carry passengers. This is a duty, but not an absolute one. It is true that carriers of passengers are not insurers of the safety of those whom they undertake to carry against all the risks of travel, but there nevertheless rests upon them this general duty of safely carrying. The adjudged cases, and the authors of text-books, in stating the duty of carriers, state in general terms that they are under obligation to carry safely. *Terre Haute, etc., R. R. Co.* v. *Jackson, supra; Christie* v. *Griggs,* 2 Campb. 79. It

was said in *Sherlock* v. *Alling*, 44 Ind. 184, in speaking of the duty of a carrier to his passengers : " His contract with them is to provide for their safe conveyance, as far as human foresight will go." An instruction stating in general terms that the carrier's duty is to carry safely could not have misled the jury in the present case, if, indeed, it could be said that such an instruction could have that effect in any. If the defendant had desired a more complete instruction upon this point, it would no doubt have been entitled to it, but as the instruction given purports to be a statement of a general rule, and is correct as far as it goes, and as no request was made to instruct more specifically upon this point, there is no such error as will warrant a reversal.

The ninth instruction reads thus : " It is the duty of a passenger to follow the reasonable directions given by the agent in charge of the railway train in respect to passing from one car to another, while the same are in motion, for the purpose of finding a seat, but if the passenger himself knows that the movement would be attended with danger it would not in such case be his duty to obey the conductor." The twelfth instruction, after stating the law substantially as in the ninth, declares that passengers may assume that the agents and servants are familiar "with the operation of the cars, and have reasonable knowledge of what is required for safety and protection while giving such directions." We think these instructions stated the law correctly. It is the duty of passengers to obey the reasonable directions of the agents in charge of the train, where there is no knowledge that such obedience would lead to danger. No cases asserting an opposite rule are cited by the able counsel for appellant, nor have we, after a careful search, been able to find any. We do find many well considered cases fully sustaining it. In a late case, that of *Pool* v. *Chicago, etc., R. W. Co.*, 56 Wis. 227, the court, after reviewing cases decided by the New York Court of Appeals, said : " These authorities fully justify the position taken by this court on the former appeal, and the remark of

the chief justice, in speaking upon that point, that 'he [the plaintiff] relied—and we think he had a right to rely—on the judgment of the person in charge of the car, presuming that by following his directions in the matter he would not expose himself to any unnecessary or unusual peril.'" In *Filer* v. *New York, etc., R. R. Co.*, 59 N. Y. 351, the court conceded it to be the general rule that it is negligence for a passenger to leave a car while it is in motion, but remarked that, "When the conductor or a brakeman directs a passenger to get off the train, although in motion, such passenger will naturally assume that he knows it is entirely safe, or he would not give the direction." In the case of *Filer* v. *N. Y., etc., R. R. Co.*, 49 N. Y. 47, the court said: "The defendant can not complain that the plaintiff did, under the circumstances, encounter some degree of peril, the jury having found that it was not imprudent for her so to do, and was encountered, at the instance of the brakeman on the cars."

The case of the *Pennsylvania R. R. Co.* v. *McCloskey*, 23 Pa. St. 526, carries the rule much further, for it was there said: "A railroad company carrying passengers, can not allege that a passenger is in fault in obeying specific directions of the conductor, instead of the general directions of which he has been informed." Our own cases hold that passengers are warranted in obeying the directions of the agents and servants of the carrier, unless such obedience leads to known danger which a prudent man would not encounter. *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381 (45 Am. R. 464); *Nave* v. *Flack*, 90 Ind. 205; *Pennsylvania Co.* v. *Hoagland*, 78 Ind. 203.

Instructions are to be taken as a whole, and if, when so taken, they express the law correctly, and without material contradiction, they will be sustained upon appeal. It is not to be expected that a trial court will embody in one instruction all the rules applicable to the various phases of the case; especially is this true where negligence is the issue, for it can not be expected that the court will group in one instruction the law of contributory negligence with rules for

determining the defendant's negligence. Where, as here, the court in full and explicit terms informs the jury that no recovery can be had in case the plaintiff's negligence contributed to the injury, it is not necessary to qualify all the other instructions by repeating the rule.

We can not disturb the verdict upon the evidence.

Judgment affirmed.

Filed Oct. 20, 1883. Petition for a rehearing overruled Jan. 2, 1884.